**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| IOU CENTRAL, INC., *doing business as* IOU FINANCIAL, INC., | * * * | |
| Plaintiff, | * * | |
| v. | * * | 1:20-CV-02109-ELR |
| LORENZO DOWNING, et al., | * * | |
| Defendants. | * * | |

_____

**O R D E R**
_____

Presently before the Court are several matters. The Court's rulings and conclusions are set out below.

**I.    Background**

This case stems from a dispute regarding an unpaid commercial loan. See generally Am. Compl. [Doc. 14]. Plaintiff IOU Central, Inc. ("IOU") is a Delaware corporation with its principal place of business in Georgia. Id. ¶ 1. IOU issues commercial loans to businesses, such as non-party Spartan Business & Technology Services, Inc. ("Spartan"), a company run by Defendant Lorenzo Downing (or "Mr. Downing"). Id. ¶¶ 4, 8–9. Mr. Downing and his wife, Defendant Joyce Downing

(individually, "Ms. Downing," or together, the "Downing Defendants"), are both named Defendants in this action and citizens of Virginia.  See generally id.

According to Plaintiff, Defendant Lorenzo Downing obtained a commercial loan on behalf of Spartan for $108,000.00 on April 6, 2016, in exchange for a Promissory Note and a guaranty agreement (the "Personal Guaranty").  Id. ¶ 9.  The Promissory Note and Personal Guaranty purportedly both contained a Georgia forum selection clause and a choice-of-law provision stating Georgia law would govern the agreements.[1]  Id. ¶¶ 9, 12.  Further, Plaintiff claims the Promissory Note contained a Security Agreement,  encumbering the borrower's property and assets as collateral for the loan.  Id. ¶ 10.  Supposedly, IOU "would not have . . . advanced" the commercial loan to Spartan and Defendant Lorenzo Downing had he not signed the Personal Guaranty, which was intended to secure Plaintiff's "interest in all property, assets and proceeds of [the Downing Defendants]," including Defendant Joyce Downing (who did not sign the loan documents).  Id. ¶ 16.

Almost a year after executing the Promissory Note, Spartan and Mr. Downing defaulted on the commercial loan, which led IOU to initiate a civil action against both parties in the Circuit Court for Prince George's County of Maryland (the "Maryland court").  Id. ¶ 20.  As a result, IOU eventually obtained a consent judgment (the "Maryland consent judgment"), requiring Spartan and Mr. Downing

---

[1] Plaintiff does not provide these documents as attachments.  See generally Am. Compl.

to pay $81,063.70 to IOU in principal and $21,812.74 in attorney's fees.  See id. ¶¶ 21–27; [see also Doc. 14-1].  However, by the time the Maryland court issued the consent judgment on March 19, 2018, Spartan had filed for Chapter 11 bankruptcy (as of January 4, 2018).  Am. Compl.  ¶¶ 4, 27.

Subsequently, Plaintiff alleges it was unable to collect any money pursuant to the Maryland consent judgment.  Id. ¶ 28.  Further, Plaintiff claims Mr. Downing then began "an unrelenting, frivolous battle to obstruct [the Maryland consent judgment's] enforcement, aided and abetted by" Defendant Damon Ward.[2]  Id.

Plaintiff maintains Defendant Ward is an attorney from Minnesota and Defendant Lorenzo Downing's "long-time friend."   Id. ¶ 3.   According to the Amended Complaint, Defendant Ward "aided and abetted" Mr. Downing in evading enforcement of the Maryland consent judgment during post-judgment discovery, although Plaintiff concedes Mr. Downing was proceeding pro se at that stage.  See id. ¶¶ 28, 30.  Moreover, Plaintiff alleges Defendant Ward "obtained pro-hac admission in the [Maryland] [c]ase" during June 2019 to "frivolously obstruct enforcement of the [Maryland] [c]onsent [j]udgment as to [Spartan] with other lawyers hired to represent it, coordinating those acts with" Defendant Lorenzo Downing. See id. ¶ 31.

---

[2] In addition, Plaintiff contends Mr. Downing's appeal regarding the Maryland consent judgment is ongoing in the Maryland courts, but that Mr. Downing previously attempted to vacate the Maryland consent judgment by an unsuccessful motion filed with the Circuit Court for Fairfax County, Virginia.  Id. ¶ 30.

On February 26, 2019, Mr. Downing filed suit against IOU in this district, collaterally attacking the Maryland consent judgment.  See Downing v. IOU C., Inc., 1:19-CV-929-MLB-JKL, 2019 WL 3502915 (N.D. Ga. May 29, 2019), adopted by, 1:19-CV-0929-SDG, 2020 WL 7409660 (N.D. Ga. Mar. 25, 2020).  Mr. Downing claimed the Maryland consent judgment was invalid because IOU allegedly forged his signature on the Personal Guaranty.  Id. ¶ 32.  Judge Grimberg dismissed the case with prejudice on March 25, 2020, finding Plaintiff's claims to be barred by the Rooker-Feldman doctrine.  See id. ¶ 33; [see also Doc. 14-2].

In the instant case, Plaintiff seeks to have this Court enforce the Maryland consent judgment against the Downing Defendants, asserting they are "both liable for IOU's debt [the commercial loan.]"  Am. Compl. ¶ 36.  Additionally, Plaintiff seeks relief against Defendant Ward for his purported participation in a "conspiracy" with the Downing Defendants to obstruct the Maryland consent judgment and defraud IOU.  See id. ¶ 38.

## II.    Procedural History

Plaintiff initiated the present action on May 15, 2020, bringing claims against the Downing Defendants and two (2) of their businesses not currently in bankruptcy (Investment Group LLC and Bourbon Street Mall LLC).[3]  See generally Compl.

---

[3] According to the original Complaint, Defendant Lorenzo Downing is a member of both Tyrell Investment Group LLC and Bourbon Street Mall LLC, while Defendant Joyce Downing is only a member of Bourbon Street Mall LLC.  See Compl. ¶¶ 2–3.  As noted above, Spartan is currently in bankruptcy and not a party to the instant matter.  See id. ¶ 4; see also Am. Compl. ¶ 4.

[Doc. 1].  On June 10, 2020, Defendants Lorenzo Downing, Joyce Downing, Tyrell Investment Group LLC, and Bourbon Street Mall LLC moved to dismiss Plaintiff's Complaint for failure to state a claim ("first motion to dismiss").  [Doc. 10].  Thus, pursuant to Local Rule 7.1, the deadline for Plaintiff to respond to the first motion to dismiss was June 24, 2020.  See LR 7.1(B) NDGa.

On June 24, 2020 Plaintiff timely submitted a response to the first motion to dismiss, which represented: "Plaintiff filed an Amended Complaint per Fed. R. Civ. P. 15 [Doc. 13] . . . [t]herefore, the Complaint is due to be denied as moot." [Doc. 13 at 1].  Although Plaintiff's response brief cited to an Amended Complaint at docket entry thirteen (13), at the time Plaintiff filed the response brief, it had not yet submitted its Amended Complaint.[4]  [See Docs. 13, 14].  In fact, Plaintiff did not submit the Amended Complaint until the next day—June 25, 2020.  See Am. Compl. While Plaintiff's response brief misrepresented the status of the Amended Complaint, the amendment was nonetheless timely.[5]  See FED. R. CIV. P. 15(a)(1)(B).

---

[4] To prevent confusion, the Court clarifies that Plaintiff's response to the first motion to dismiss is the document located at docket entry thirteen (13).  [Doc. 13].  Plaintiff's Amended Complaint, filed the day after the response brief, may be found at docket entry fourteen (14).  [Doc. 14].

[5] Because Defendants filed their first motion to dismiss (pursuant to Rule 12(b)) on June 10, 2020, Plaintiff could amend its Complaint as a matter of course until July 1, 2020.  See FED. R. CIV. P. 15(a)(1)(B) (noting a plaintiff can file an amended complaint as a matter of course within twenty-one (21) days after service of a motion filed under Rule 12(b), (e), or (f)).

By its Amended Complaint, Plaintiff dropped its claims against Tyrell Investment Group LLC and Bourbon Street Mall LLC and added Damon Ward as a Defendant. <u>See generally</u> Am. Compl. ¶ 3. Accordingly, Plaintiff now brings the following claims:

| Count | Claim | Alleged Against Defendant(s) |
|-------|-------|------------------------------|
| I | Declaratory, Equitable, and Related Relief | Defendant Lorenzo Downing |
| II | Breach of Fiduciary Duty, Conversion, and Related Relief | Defendants Lorenzo Downing, Joyce Downing, and Damon Ward |
| III | Equitable Lien/Equitable Mortgage and Related Relief | Defendants Lorenzo Downing and Joyce Downing |
| IV | Constructive Trust and Related Relief | Defendants Lorenzo Downing, Joyce Downing, and Damon Ward |
| V | Attorney's Fees and Related Relief | Defendants Lorenzo Downing, Joyce Downing, and Damon Ward |

<u>See generally</u> <u>id.</u>

On July 9, 2020, Defendants submitted their "Motion to Dismiss Amended Complaint." [Doc. 20]. Plaintiff filed its response brief one (1) day late on July 24, 2020. [<u>See</u> Doc. 22]; <u>see also</u> LR 7.1(B) NDGa. The same day, Plaintiff submitted a "Motion for Acceptance of Response [DOC 22] as to Motion to Dismiss [DOC 20]", requesting that the Court accept its untimely response. [Doc. 24]. Plaintiff also filed a "Motion to Strike and/or Disregard Motion to Dismiss and Affidavits [Doc. 20]," seeking to discard Defendants' motion to dismiss the Amended Complaint, or at least the attached Declarations of the Downing Defendants. [Doc. 23]. In turn, Defendants filed a "Motion to Strike Plaintiff's Response to

Defendants' Motion to Dismiss Amended Complaint" based on the untimeliness of Plaintiff's response brief.  [Doc. 27].

The above motions are all ripe for determination.  Having set forth the relevant background, the Court first addresses the preliminary pending motions in this case before reaching Defendants' motion to dismiss the Amended Complaint.

## III.    Preliminary Matters [Docs. 10, 23, 24, 27]

The Court begins by addressing the various pending motions surrounding the instant motion to dismiss.  First, the Court notes that when "[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary." See Dresdner Bank AG v. M/V Olympia Voyager, 463 F.3d 1210, 1215 (11th Cir. 2006) (internal quotation marks and citation omitted).  Thus, in light of Plaintiff's Amended Complaint, the Court denies as moot Defendants' first motion to dismiss. [Doc. 10].

Second, as earlier referenced, Plaintiff submitted its response in opposition to Defendants' motion to dismiss the Amended Complaint one (1) day late.  [See Doc. 22].  Recognizing this procedural failure, Plaintiff submitted a "Motion for Acceptance of Response [DOC 22] as to Motion to Dismiss [DOC 20]." [Doc. 24]. In response, Defendants filed a "Motion to Strike Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint." [Doc. 27].  While Plaintiff's

response brief was indeed untimely, this Court has a "strong preference for deciding cases on the merits . . . whenever reasonably possible."[6]  See Perez v. Wells Fargo N.A., 774 F.3d 1329, 1332 (11th Cir. 2014).  Thus, the Court grants Plaintiff's "Motion for Acceptance of Response [DOC 22] as to Motion to Dismiss [DOC 20]" [Doc. 24] and denies Defendants' "Motion to Strike Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint" [Doc. 27].  Accordingly, the Court accepts Plaintiff's response brief.  [Doc. 22].

Next, by its "Motion to Strike and/or Disregard Motion to Dismiss and Affidavits [Doc. 20]," Plaintiff moves the Court to: (1) strike the Declarations of the Downing Defendants attached to their motion to dismiss, or (2) strike the entirety of the motion to dismiss.  [See Doc. 23].  Regarding the Declaration of Lorenzo Downing, Plaintiff specifically objects to the reference or inclusion of "inadmissible settlement communications . . .  in violation of FED. R. EVID. 408."  [Id. ¶ 11].  The Court agrees that this inclusion of settlement communications by Defendants is improper.  Thus, the Court finds it appropriate to disregard the Declarations at this stage.

---

[6] While "[t]he Court shares some of [Defendants'] frustration with [Plaintiff's] continuing failure to file responses—or, indeed, almost anything—in a timely fashion[,]" the Court nonetheless retains its "strong preference for resolving matters on their merits, rather than on technicalities." See Pirelli Tire LLC v. Cronrath, 4:12-CV-0068-HLM, 2014 WL 12703280, at *1 (N.D. Ga. Apr. 1, 2014).

As for Plaintiff's motion to strike Defendants' motion to dismiss, the only argument Plaintiff offers in support is that Defendants' motion failed to comply with the formatting guidelines set forth by the Local Rules of this Court. [Id. ¶¶ 4–8]. "The Court, however, has discretion to waive [its] Local Rule[s]." Pirelli Tire, 2014 WL 12703280, at *1 (citing Fluor Intercontinental, Inc. v. IAP Worldwide Servs., Inc., 533 F. App'x 912, 922 n.35 (11th Cir. 2013)); accord Kynes v. PNC Mortg., Case No. 1:12-CV-4477-TWT, 2013 WL 4718294, at*6 (N.D. Ga. Aug. 30, 2013) (same). The Court exercises that discretion here, and thus will not strike Defendants' motion to dismiss.

Accordingly, the Court grants in part and denies in part Plaintiff's "Motion to Strike and/or Disregard Motion to Dismiss and Affidavits [Doc. 20]." [Doc. 23]. Specifically, the Court grants Plaintiff's motion to the extent the Court will disregard the Declarations of the Downing Defendants at this stage; but denies Plaintiff's motion to the extent is seeks to strike the instant motion to dismiss. [Id.]

## IV.   Defendants' Motion to Dismiss Amended Complaint [Doc. 20]

Having dispensed with these preliminary matters, the Court now proceeds to its analysis of Defendants' instant motion to dismiss. [Doc. 20]. Defendants move to dismiss the Amended Complaint for three (3) reasons. First, they claim this Court lacks subject matter jurisdiction pursuant to Rule 12(b)(1) as to Count I—Declaratory, Equitable, and Related Relief against Defendant (alleged against

Defendant Lorenzo Downing only).  [Doc. 20-1 at 10–16].  Second, Defendants argue the Court lacks personal jurisdiction over all Defendants pursuant to Rule 12(b)(2).  [Id. at 1, 16–18].  Third, they contend Plaintiff fails to state a claim pursuant to Rule 12(b)(6) in Count II—Breach of Fiduciary Duty, Conversion, and Related Relief (alleged against all Defendants); Count III—Equitable Lien/Equitable Mortgage and Related Relief (alleged against the Downing Defendants only); and Count IV— Constructive Trust and Related Relief (alleged against all Defendants).[7]  [Id. at 18–25].

As an initial matter, the Court notes that because "[a] court without personal jurisdiction is powerless to take further action," courts must rule on jurisdictional issues before considering the merits of a complaint.  Posner v. Essex Ins. Co., 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("[A] court should decide a 12(b)(2) motion to dismiss before a 12(b)(6) motion because a court without 12(b)(2) jurisdiction lacks power to dismiss a complaint for failure to state a claim.") (internal quotation omitted and alteration adopted).  Accordingly, the Court first considers Defendants' contention that Plaintiff's claims against them should be dismissed for lack of personal jurisdiction.  [See Doc. 20-1 at 16–18].  If the Court finds it lacks personal jurisdiction over Defendants, the undersigned must dismiss Plaintiff's claims against

---

[7] Additionally, Defendants argue that Plaintiff's Count V—Attorney's Fees and Related Relief should fail because all its substantive claims are due to be dismissed.  [Doc. 20-1 at 25].

them.  Accord Read v. Ulmer, 308 F.2d 915, 917 (5th Cir. 1962) ("It would seem elementary that if the Court has no jurisdiction over a defendant, the defendant has an unqualified right to have an order granting its motion to dismiss.").[8]  The Court sets forth the relevant legal standard and then addresses the merits of the Parties' respective positions.

### A.   Legal Standard

A plaintiff bears the initial burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction over a nonresident defendant.  Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc., 593 F.3d 1249, 1274 (11th Cir. 2010); see also Morris v. SSE, Inc., 843 F.2d 489, 492 (11th Cir. 1988) ("[T]he plaintiff bears the burden of establishing a prima facie case of jurisdiction over the movant, non-resident defendant.").  "A federal court sitting in diversity," as here, "undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, 593 F.3d at 1257–58 (internal quotation marks omitted) (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir. 2009)).  The Court must take care not to conflate these inquires

---

[8] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit.  See Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

because Georgia's long-arm statute does not provide jurisdiction that is coextensive with due process.  Id. at 1259.  Instead, the long-arm statute "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of procedural due process."  Id.

The Georgia long-arm statute provides that a court may exercise personal jurisdiction over a nonresident defendant who:

> (1) Transacts any business within the state;
>
> (2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;
>
> (3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state;

See O.C.G.A. § 9-10-91(1)–(3).  The Georgia long-arm statute contemplates "two kinds of personal jurisdiction [over individual defendants]—specific and general." Sarvint Techs., Inc. v. Omsignal, Inc., 161 F. Supp. 3d 1250, 1258 (N.D. Ga. 2015). As this district has observed:

> O.C.G.A. § 9-10-91(1) creates specific jurisdiction, which "arises out of" or "relates to" the cause of action and may exist "even if [the nonresident defendant's] contacts [with the forum state] are isolated and sporadic."  [LSI Indus. Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369, 1375 (Fed. Cir. 2000)] (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472–73 (1985)).  By contrast, "[g]eneral jurisdiction arises when a defendant maintains continuous and systematic contacts

with the forum state" and permits the exercise of personal jurisdiction over a defendant "even when the cause of action has no relation to those contacts." Id. (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414–16 (1984)).

Id. (internal punctuation omitted).

If the Georgia long-arm statute authorizes personal jurisdiction over a defendant, the Court proceeds to the due process component of the jurisdictional analysis. "The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns." Diamond Crystal Brands, 593 F.3d at 1267. "Due process requires that (1) a nonresident defendant has certain minimum contacts with the forum state and (2) the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" Thomas v. Strange Engr., Inc., CV 111-074, 2012 WL 993244, at *5 (S.D. Ga. Mar. 22, 2012) (citing Diamond Crystal Brands, 593 F.3d at 1267).

With these standards in mind, the Court now turns to the Parties' arguments regarding personal jurisdiction.

### B.    Discussion

As a preliminary matter, the Court finds it necessary to dispel any ambiguity regarding which Defendants assert objections to personal jurisdiction. Importantly, "[u]nder FED. R. CIV. P. 12(h)(1), a party is deemed to have waived any objection to personal jurisdiction . . . if the party makes a pre-answer motion under Rule 12 and fails to include such objections in that motion." Pardazi v. Cullman Med. Ctr., 896

F.2d 1313, 1317 (11th Cir. 1990) (internal citation omitted).  Further, a plaintiff must have notice of a defendant's objection to personal jurisdiction so that it can address the objection.  Cf. Bledsoe-Colvin v. Alexander, 127 F. Supp. 2d 1326, 1328 (M.D. Ala. 2001) ("Although failure to object to personal jurisdiction can waive the defense, in the absence of a waiver, a district court may raise the issue on its own motion so long as the parties are given notice to address it.") (internal citations omitted).

In the matter at hand, based on the content of Defendants' motion to dismiss, as well as the substance Plaintiff's response, the Court discerns that the issue of personal jurisdiction as to *all* Defendants has been raised, briefed, and is ripe for determination.[9]  [See Docs. 20-1 at 16–18; 22 at 8–13].  Accordingly, the Court proceeds with its analysis of the Parties' arguments regarding personal jurisdiction as to each of the three (3) Defendants, beginning with Defendant Joyce Downing.

---

[9] The Court notes that the styling of Defendants' motion is potentially confusing.  Specifically, the section of Defendants' brief on personal jurisdiction bears two (2) different titles.  [Doc. 20-1 at 1, 16].  In the motion's table of contents, the section title is "Dismissal Pursuant to Rule 12(b)(2) is Appropriate Because This Court Lacks Personal Jurisdiction *Over Joyce Downing and Damon Ward*;" but within the text of the brief, the section title is "Dismissal Pursuant to Rule 12(b)(2) is Appropriate Because This Court Lacks Personal Jurisdiction *Over Joyce Downing*."  [See id.] (emphasis added).  While neither of these section headings include Defendant Lorenzo Downing, the text of the brief includes substantive arguments that this Court lacks personal jurisdiction over him.  [See id. at 17–18].  Further, Plaintiff's response makes clear IOU is on notice that all Defendants assert lack of personal jurisdiction because it makes arguments in rebuttal regarding all three (3) Defendants.  [See Doc. 22 at 8–13].

     1.   <u>Personal Jurisdiction as to Defendant Joyce Downing</u>

In their motion to dismiss, Defendants argue this Court lacks personal jurisdiction over Defendant Joyce Downing.  [Doc. 20-1 at 16–18].  Because Plaintiff bears the burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction over a nonresident defendant, the Court first examines Plaintiff's allegations in the Amended Complaint.  <u>See</u> <u>Diamond Crystal Brands</u>, 593 F.3d at 1274.

Plaintiff alleges Defendant Joyce Downing is subject to personal jurisdiction in this Court for reasons stemming from her relationship to her husband, Defendant Lorenzo Downing.[10]  In fact, other than vaguely asserting Ms. Downing benefitted from supposedly wrongfully-obtained funds secured by Mr. Downing through the commercial loan for Spartan, it is unclear upon what basis Plaintiff claims this Court may exercise personal jurisdiction.  <u>See</u> Am. Compl. ¶ 6.

First, Plaintiff proffers that Defendant Joyce Downing transacted business in Georgia "personally or through her agent(s)" by obtaining the commercial loan for Spartan.  <u>See id.</u>  Upon review, the Court disagrees with Plaintiff's characterization of Defendant Joyce Downing's actions.  It is undisputed that Defendant Joyce Downing did not sign any documents related to the commercial loan—only

---

[10] The allegations in the Amended Complaint regarding personal jurisdiction are directed toward all Defendants generally, without any specificity, although (as the Court explains herein) many of the allegations can only apply to Defendant Lorenzo Downing.  <u>E.g.</u>, Am. Compl. ¶ 6.

Defendant Lorenzo Downing signed them.[11]  See id. ¶¶ 8–9.  Additionally, Plaintiff makes no factual allegations to support the existence of an agency relationship between Ms. Downing and her husband.  See generally id.; see also J'Carpc, LLC v. Wilkins, 545 F. Supp. 2d 1330, 1337 (N.D. Ga. 2008) ("'In order that acts of an agent be binding on his alleged principal, a principal and agent relationship must be proved and it must be established that the agent acted within the scope of his authority.'") (quoting Anaya v. Coello, 279 Ga. App. 578, 580 (2006)) (alterations adopted).  Therefore, Plaintiff's allegations do not establish that Defendant Joyce Downing transacted any business within Georgia.  See O.C.G.A. § 9-10-91(1).

Next, Plaintiff contends Defendant Joyce Downing is subject to personal jurisdiction because of supposed "tortious acts or omissions" she either "committed[] or conspired to commit . . . with the intent to injure IOU in Georgia." See Am. Compl. ¶ 6.  Even taking all of Plaintiff's allegations in the Amended Complaint as true, as the Court must at this stage, none of these allegations establish that Ms. Downing took any action in relation to the commercial loan at the heart of this dispute or any of the subsequent disagreements (or legal actions) between IOU

---

[11] For this same reason, the Court finds Plaintiff's allegation that Defendant Joyce Downing purportedly "consented to personal jurisdiction" in Georgia by virtue of any of the documents her husband signed to be without merit.  See Am. Compl. ¶ 6.

and Mr. Downing.[12]   <u>See generally</u> <u>id.</u>  Therefore, Plaintiff's allegations do not support personal jurisdiction on the basis that Defendant Joyce Downing committed a tortious act or omission within the state.  <u>See</u> O.C.G.A. § 9-10-91(2).  Neither do Plaintiff's allegations connect Ms. Downing to any tortious injury Plaintiff claims to have suffered.  <u>See</u> O.C.G.A. § 9-10-91(3).

For these reasons, none of Plaintiff's allegations against Defendant Joyce Downing meet the initial burden imposed by Georgia's long-arm statute.  <u>See</u> <u>Diamond Crystal Brands,</u> 593 F.3d at 1257 ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.") (internal citation omitted).  "Because Plaintiff has failed to prove the existence of personal jurisdiction under Georgia's long-arm statute, the Court does not need to decide whether the exercise of jurisdiction . . . would be proper under the Due Process Clause."  <u>FisherBroyles, LLP v. Juris L. Group</u>, 1:14-CV-1101-WSD, 2015 WL 630436, at *6 (N.D. Ga. Feb. 12, 2015) (alteration adopted and internal quotation omitted).

---

[12] The Court notes that Defendant Joyce Downing was not a party to the prior lawsuit Lorenzo Downing initiated against IOU in this district.  <u>See</u> <u>Downing</u>, 2019 WL 3502915, <u>adopted by</u>, 2020 WL 7409660 (listing "Lorenzo Downing, Individually" as the sole plaintiff).  Therefore, the Court rejects Plaintiff's contention that Ms. Downing "consented to" personal jurisdiction in Georgia because of that action.  <u>See</u> Am. Compl. ¶ 6.

Thus, the Court grants Defendants' motion to dismiss regarding lack of personal jurisdiction as to Defendant Joyce Downing and dismisses Plaintiff's claims against her.  [Doc. 20].

2.      Personal Jurisdiction as to Defendant Lorenzo Downing

Next, Defendants move to dismiss Plaintiff's claims against Defendant Lorenzo Downing for lack of personal jurisdiction.  [See Doc. 20-1 at 17–18].  While Plaintiff does not indicate whether it seeks to invoke general or specific personal jurisdiction over Defendant Lorzenzo Downing, it appears to the Court (as Defendants rightfully note in their motion to dismiss) that the allegations of Amended Complaint relate to specific jurisdiction.[13]  See Am. Compl. ¶¶ 6, 8–9, 11; [see also Doc. 20-1 at 17–18].  To determine whether Plaintiff carries its "burden of establishing a prima facie case of personal jurisdiction over" Defendant Lorenzo Downing, the Court again turns to the allegations of the Amended Complaint.  See Morris, 843 F.2d at 492.

---

[13] Plaintiff's allegation that Defendant Lorenzo Downing consented to personal jurisdiction in this Court by virtue of the previous lawsuit Mr. Downing brought against IOU might be construed as an argument in support of general personal jurisdiction.  See Am. Compl. ¶ 6.  Plaintiff does not cite, nor does the Court find, any precedent to support Plaintiff's proposition that Mr. Downing's *previous* filing of a lawsuit against IOU in the Northern District of Georgia gives rise to personal jurisdiction over Mr. Downing as a defendant in *future* lawsuits in this district, including the instant matter.  Accordingly, the Court rejects this argument.

### a. *Georgia Long-Arm Statute*

In essence, Plaintiff claims Defendant Lorenzo Downing is subject to personal jurisdiction in this Court because he "transacted business" in Georgia by procuring the commercial loan for Spartan.  See Am. Compl. ¶ 6.  According to Plaintiff, Mr. Downing submitted the commercial loan application and executed the Promissory Note on the website for IOU's Georgia office.  Id. ¶¶ 8–9.  Further, Plaintiff contends Mr. Downing agreed to personal jurisdiction in Georgia by agreeing to the terms of the Promissory Note and the alleged Personal Guaranty.  Id. ¶ 6.

Upon review, the Court agrees and finds that Defendant Lorenzo Downing "transacted business" in Georgia by obtaining the commercial loan for Spartan from Plaintiff's Georgia office.   Thus, pursuant to O.C.G.A. § 9–10–91(1), specific personal jurisdiction exists as to Defendant Lorenzo Downing.  See Diamond Crystal Brands, 593 F.3d at 1264 ("Georgia's long-arm statute permits jurisdiction where a plaintiff's cause of action 'arises out of' a nonresident defendant's 'transact[ion] of any business within [Georgia].'  O.C.G.A. § 9-10-91(1). . . . [W]e must interpret this statute literally and give full effect to the breadth of its language.")  (alterations in original); see also Sarvint Techs., 161 F. Supp. 3d at 1258 ("O.C.G.A. § 9-10-91(1) creates specific jurisdiction, which arises out of or relates to the cause of action[,] and may exist even if the nonresident defendant's contacts with the forum state are

isolated and sporadic.").   However, this finding does not conclude the Court's inquiry.

As noted above, "[a] federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." Diamond Crystal Brands, 593 F.3d at 1257–58 (internal quotation omitted).  Therefore, while specific personal jurisdiction as to Defendant Lorenzo Downing may be appropriate according to Georgia' long-arm statute, the Court "must now address the due process component of the jurisdictional analysis." See Thomas, 2012 WL 993244, at *5.

### b.   *Due Process*

As noted above, due process requires both (1) minimum contacts with the forum state and that (2) exercising personal jurisdiction over the nonresident defendant would not offend "traditional notions of fair play and substantial justice." See Diamond Crystal Brands, 593 F.3d at 1267.  Thus, the Court discusses whether Plaintiff's allegations in the Amended Complaint, taken as true, meet the two (2) prongs of the due process jurisdictional analysis.

As to the first prong of the due process analysis—minimum contacts with Georgia—Plaintiff contends Defendant Lorenzo Downing entered into a contract

with its Georgia office when he electronically executed the Promissory Note (and supposed Personal Guaranty) to obtain the commercial loan for Spartan.  See Am. Compl. ¶ 6, 8–9, 11.  "In Diamond Crystal Brands, the Eleventh Circuit noted that entering a contract with a citizen of another state, standing alone, does not automatically satisfy the minimum contacts test." Thomas, 2012 WL 993244, at *5; cf. HD Supply Constr. Supply, Ltd. v. Mowers, 1:19-CV-02750-SDG, 2020 WL 5774786, at *7 (N.D. Ga. Sept. 28, 2020) ("[A] single contract with a forum company does not show 'continuous and systematic' contact between Defendants and the forum state.").

> Instead, when inspecting the contractual relationship for minimum contacts, courts must focus on the substance of the transaction including prior negotiations, contemplated future consequences, the terms of the contract, and the actual course of dealing.  The focus must be on whether the nonresident defendant engaged in significant activities within a state or created continuing obligations with residents of the forum.

See Thomas, 2012 WL 993244, at *5 (citing Diamond Crystal Brands, 593 F.3d at 1267 and Burger King, 471 U.S. at 480).

Here, the Court finds that Defendant Lorenzo Downing did not engage in sufficient minimum contacts with Georgia to satisfy first prong of the due process personal jurisdiction analysis.  See Diamond Crystal Brands, 593 F.3d at 1267. Plaintiff does not allege Defendant Lorenzo Downing engaged in any "negotiations" with IOU.  Although Plaintiff contends the documents Mr. Downing signed "are

governed by Georgia law and include a Georgia forum clause" (see Am. Compl. ¶ 12), the Supreme Court has instructed that "such provision[s] standing alone [are] insufficient to confer jurisdiction" absent other facts supporting "deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there." See Burger King Corp., 471 U.S. at 482.

Additionally, unlike the nonresident defendant in Diamond Crystal Brands, Defendant Lorenzo Downing did not engage in multiple, purposeful, meaningful transactions in Georgia. See 593 F.3d at 1269–70 (a nonresident defendant established minimum contacts in Georgia by, inter alia, engaging in substantial, meaningful, and ongoing contact with Georgia manufacturer over the course of six (6) months and fourteen (14) transactions). Rather, Mr. Downing entered into a one-time commercial loan agreement. See Am. Compl. ¶ 9. Further distinguishing the facts at hand from those presented by Diamond Crystal Brands, while Mr. Downing's performance of his contractual obligation (that is, repayment of the commercial loan) may have "logically required contact and interaction" with the state of Georgia, since he did not repay the commercial loan, he did not have repeated contacts and interactions with the state. See 593 F.3d at 1269.

For these reasons, the Court finds Plaintiff fails to demonstrate Defendant Lorenzo Downing engaged in minimum contacts with Georgia sufficient to satisfy

the first prong of the due process personal jurisdiction analysis.[14]  See Thomas, 2012 WL 993244, at *5.  Accordingly, the Court may not exercise personal jurisdiction over Defendant Lorenzo Downing, and grants Defendants' motion to dismiss Plaintiff's claims against him.  [Doc. 20].

3.    Personal Jurisdiction as to Defendant Damon Ward

Lastly, Defendants argue this Court lacks personal jurisdiction over Defendant Ward.  [Doc. 20-1 at 1, 16–18].  Again, Plaintiff bears the burden of pleading sufficient facts to establish a prima facie case of personal jurisdiction.  See Diamond Crystal Brands, 593 F.3d at 1274.

In support of its position, Plaintiff vaguely alleges in the Amended Complaint that Defendant Ward engaged in a "conspiracy" with the Downing Defendants to wrongfully obtain the commercial loan for Spartan, although it does not specify how Defendant Ward was involved in obtaining the loan in any way.  See Am. Compl. ¶¶ 6, 8–9.  Additionally, Plaintiff argues Defendant Ward "aided and abetted" Defendant Lorenzo Downing in evading enforcement of the Maryland consent judgment during post-judgment discovery.  See id. ¶ 28.  However, Plaintiff concedes Mr. Downing was proceeding *pro se* at that stage of the Maryland action and proffers no further details.  See id. ¶ 30.  Further, Plaintiff maintains that

---

[14] Because Plaintiffs fail to carry their burden to establish a prima facie case of personal jurisdiction pursuant to this first prong of the two (2)-part due process analysis, the Court declines to reach the second prong.

Defendant Ward "obtained *pro-hac* admission in the [Maryland] [c]ase" during June 2019 and "continues to frivolously obstruct enforcement of the [Maryland] [c]onsent [j]udgment as to [Spartan] with other lawyers hired to represent it, coordinating those acts with" Defendant Lorenzo Downing.  See id. ¶ 31.

The Court disagrees with Plaintiff that its allegations are sufficient to invoke either general or specific jurisdiction over Defendant Ward pursuant to the Georgia long-arm statute.  It is undisputed that Defendant Ward did not sign any documents related to the commercial loan and Plaintiff proffers no details on how Defendant Ward was connected to that underlying transaction.  See id. ¶¶ 8–9.  Thus, Plaintiff's allegations do not establish that Defendant Ward transacted any business within Georgia.  See O.C.G.A. § 9-10-91(1).

As for any tortious acts or omissions giving rise to Plaintiff's purported injury, Plaintiff makes no specific factual allegations to support the contention that Defendant Ward engaged in a conspiracy with the Downing Defendants to injure IOU in Georgia.  See Am. Compl. ¶¶ 6, 28.  Neither does Plaintiff offer any explanation as to how Defendant Ward somehow "aided or abetted" Mr. Downing in the Maryland action while Mr. Downing was *pro se*.  See id. ¶ 30.  Accordingly, the Court finds these allegations insufficient to invoke personal jurisdiction over Defendant Ward.  See O.C.G.A. § 9-10-91(2)–(3).

Lastly, Plaintiff claims personal jurisdiction exists because Defendant Ward appeared *pro hac vice* before the Maryland court in June 2019 and "continues to frivolously obstruct enforcement of the [Maryland consent judgment.]" See Am. Compl. ¶ 31.   However, the Eleventh Circuit provides that the proper avenue to address alleged grievances related to wrongful conduct by an attorney is through "the court[] in which the litigation occurs."  See Farese v. Scherer, 342 F.3d 1223, 1231 (11th Cir. 2003) (internal quotation omitted).  Thus, any purported misconduct by Defendant Ward in the case before the Maryland court does not support personal jurisdiction in *this* Court.  See id.

For these reasons, Plaintiff fails to establish a prima facie showing of personal jurisdiction over Defendant Ward pursuant to Georgia's long-arm statute.  See Diamond Crystal Brands, 593 F.3d at 1257 ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.") (internal citation omitted).   "Because Plaintiff has failed to prove the existence of personal jurisdiction under Georgia's long-arm statute, the Court does not need to decide whether the exercise of jurisdiction . . . would be proper under the Due Process Clause."  FisherBroyles, 2015 WL 630436, at *6 (alteration adopted and internal quotation omitted).

Thus, the Court grants Defendants' motion to dismiss based on lack of personal jurisdiction as to Defendant Ward and dismisses Plaintiff's claims against him.  [Doc. 20].

## V.    Summary

In sum, the Court grants Defendants' motion to dismiss the Amended Complaint pursuant to Rule 12(b)(2).  [Doc. 20].  In light of the Court's finding that personal jurisdiction does not exist as to any of the Defendants in this matter, it need not reach Defendants' arguments for dismissal pursuant to Rule 12(b)(1) or Rule 12(b)(6).  [See Doc. 20-1 at 10–15, 18–25].

## VI.    Conclusion

For the aforementioned reasons, the Court **DENIES AS MOOT** Defendants' Motion to Dismiss.  [Doc. 10].  Next, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's "Motion to Strike and/or Disregard Motion to Dismiss and Affidavits [Doc. 20]."  [Doc. 23].  Specifically, the Court **GRANTS** Plaintiff's motion to disregard the Declarations of the Downing Defendants, but **DENIES** Plaintiff's motion to strike Defendants' Motion to Dismiss the Amended Complaint. [Doc. 23].  Additionally, the Court **GRANTS** Plaintiff's "Motion for Acceptance of Response [DOC 22] as to Motion to Dismiss [DOC 20]" [Doc. 24] and **DENIES** Defendants' "Motion to Strike Plaintiff's Response to Defendants' Motion to Dismiss Amended Complaint."  [Doc. 27].

Finally, the Court **GRANTS** Defendants' Motion to Dismiss the Amended Complaint.  [Doc. 20].  Accordingly, the Court **DISMISSES WITH PREJUDICE** this action and **DIRECTS** the Clerk to close this case.

**SO ORDERED**, this 24th day of February, 2021.


*Eleanor L. Ross*

Eleanor L. Ross
United States District Judge
Northern District of Georgia